```
                         UNITED STATES DISTRICT COURT
                         SOUTHERN DISTRICT OF FLORIDA

                         CASE NO. 09-Civ-20178-MORENO
                         MAGISTRATE JUDGE P.A. WHITE

WALTER B. CAMPBELL,           :

     Petitioner,              :

v.                            :     REPORT OF
                                    MAGISTRATE JUDGE
WALTER A. McNEIL,             :

     Respondent.              :
_____
```

## I. Introduction

Walter Campbell, who is presently confined at Columbia Correctional Institution in Lake City, Florida, has filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, attacking his conviction and sentence in case number 03-13612, entered in the Eleventh Judicial Circuit Court for Miami-Dade County.

This cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. § 636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2254 Cases in the United States District Courts.

The Court has before it the petition for writ of habeas corpus, the Respondent's response to an order to show cause and appendix of exhibits, Campbell's memorandum on limitations and reply.

## II. Procedural History

Campbell was charged with attempted strong-arm robbery and burglary with assault or battery. [DE# 10, App. A and T. 5].

Campbell proceeded to trial on a misidentification theory without listing any defense witnesses:

> THE COURT: ... Sir, you heard one [of] your lawyers, Madeline Acosta, say that no defense witness list has been filed.
>     Do you understand that?
> THE DEFENDANT: Yes.
> THE COURT: Do you understand that since she has not filed a defense witness list no defense witnesses will be called?
> THE DEFENDANT: Yes.
> THE COURT: You are in agreement with that?
> THE DEFENDANT: Yes.
> THE COURT: You don't have any defense witnesses that you wish to call?
> THE DEFENDANT: No.

[DE# 10, T. 4].

Leo Hernandez testified he was at work at an auto repair shop on October 16, 2000, when he heard the victim scream for help. She was struggling with an assailant for her purse. [DE# 10, T. 162, 188]. Hernandez and another bystander, Carlos, ran to help then chased the perpetrator away. [DE# 10, T. 188-89]. The two men were not able to stop the perpetrator but Carlos pulled off his hat and shirt. [DE# 10, T. 189]. The perpetrator got into a car; Hernandez was face-to-face with him and tried to pull him out the vehicle but the man drove away. [DE# 10, T. 207]. Hernandez testified he left the scene before the first officer responded and did not provide a statement or description to officers that day. [DE# 10, T. 197].

Officer Marisol Gurbut responded to the scene on the date of the offense. She testified she got verbal statements from the victim, Hernandez, and the other witness. [DE# 10, T. 209]. Defense counsel attempted to impeach Gerbut with police reports suggesting Fernandez was not present at the scene and did not give her a statement. [DE# 10, T. 216-19].

Three years later, on May 3, 2003, Detective Nelson contacted Hernandez to look at a photo array. The detective compiled the array with the help of a clearing house; the photos were positioned randomly on the sheet. [DE# 10, T. 244]. The detective said he would show Hernandez a page of photos and Hernandez would have to pick out the picture without any help. [DE# 10, T. 190]. The array was entered into evidence. [DE# 10, T. 229-30]. Hernandez immediately recognized Campbell's picture as the person who committed the offense. [DE# 10, T. 191]. He also identified Campbell at trial and was "absolutely positive" about the identification. [DE# 10, T. 193, 207].

Adriana Cristaly, forensic analyst with the Metro-Dade Police Department's Crime Laboratory Bureau testified as a DNA expert. [DE# 10, T. 251]. She has bachelors and masters degrees in biology and has studied population genetics. [DE# 10, T. 251-54]. She had performed DNA analysis techniques used by the county lab thousands of times. [DE# 10, T. 251-52]. She was previously designated as an expert witness in forensic biology. [DE# 10, T. 253].

Cristaly explained the steps for obtaining DNA profile in detail inlcuing extraction, quantification and replication. [DE# 10, T. 257-58]. Cristaly explained the lab's approved protocols for ensuring the integrity of evidence. [DE# 10, T. 260-61]. She used these steps to profile the DNA sample obtained from the

3

perpetrator's hat and the oral swab standard from Campbell. [DE# 10, T. 261-62]. Cristaly determined the sample and standard matched; the probability the DNA was from someone unrelated to Campbell is one in nineteen quadrillion. [DE# 10, T. 263, 277]. Defense counsel extensively cross-examined Cristaly on her qualifications, methodology, and calculation of probability.

Outside the jury's presence the court found Cristaly's methodology satisfied the Frye[1] standard for scientific evidence:

> THE COURT: Now, for the record, the Court will find that based on the testimony we have heard in court here that the lab here from Ms. Cristaly found generally accepted scientific procedures for the collection and the comparison of DNA evidence and DNA profiles and the Court finds that the statistical evidence presented regarding DNA meets the Frye standard of scientific reliability.

[DE# 10, T. 283-84].

The court verified that Campbell was satisfied with his defense and with his decision not to testify or call any witnesses:

> THE COURT: ... Mr. Campbell, are you satisfied with the defense as presented?
> THE DEFENDANT: Yes.
> THE COURT: Do you understand that no defense witness had been called or will be called and you are in agreement with that?
> THE DEFENDANT: Yes.

[DE# 10, T. 296-97].

---

[1] Frye v. United States, 293 F. 1013, 1014 (D.C.Cir. 1923).

After both sides had rested and the jury was excused to deliberate, Campbell expressed dissatisfaction with counsel for the first time. He asserted that defense counsel should have presented an alibi defense. Campbell had never previously mentioned an alibi defense to counsel. [DE# 10, T. 342-44].

The jury found Campbell guilty of attempted strong-arm robbery and burglary with an assault or battery with a person present. [DE# 10, App. B]. The court adjudicated Campbell guilty and imposed a life sentence. [DE# 10, App. C]. On direct appeal, Campbell argued his sentence had to be vacated because he was improperly sentenced. [DE# 10, App. E]. The Third District Court of Appeal remanded for a new sentencing hearing. Campbell v. State, 949 So. 2d 1093 (Fla. 3d DCA 2007) (3D05-2534).

On remand, the trial court sentenced Campbell to five years for the robbery and re-imposed a life sentence for the burglary. [DE# 10, App. L]. Defense counsel filed an Anders[2] brief on appeal because no meritorious appellate issue existed. [DE# 10, App. R]. The Third District per curiam affirmed on June 18, 2008. Campbell v. State, 994 So. 2d 1151 (Fla. 3d DCA 2008) (3D07-1357).

On March 14, 2007, Campbell filed a motion for post-conviction relief in which he argued counsel was ineffective for failing to: (1) investigate and prepare for trial and discuss trial strategy with Campbell; (2) challenge the admissibility of the State's DNA testing; (3) hire a defense DNA expert; (4) request a Frye hearing on the DNA extraction method and computation of population frequencies; (5) file a motion to suppress Campbell's identity; and (6) object to the State's knowing use of perjured testimony and

---

[2] Anders v. California, 386 U.S. 738 (1967).

impeach State witnesses. [DE# 10, App. S].

The trial court denied post-conviction relief, finding defense counsel was not ineffective because: (1) counsel was well-prepared for trial and cross-examination and did an excellent job defending Campbell and Campbell did not raise any of his concerns with the trial court; (2) counsel effectively challenged and questioned the DNA evidence which was admissible and could not have been excluded; (3) there is no showing a defense expert would have had favorable testimony or led to a different result; (4) a Frye hearing was unnecessary and there was no showing the result of trial would have been different; (5) the court would have denied any motion to suppress Campbell's identification because it had no factual or legal basis and because the identifications were not improper or suggestive; and (6) counsel effectively cross-examined the State's witnesses. [DE# 10, App. U]. The Third District per curiam affirmed and denied rehearing. Campbell v. State, 990 So. 2d 1071 (Fla. 3d DCA 2008) (3D07-3174). The mandate issued March 13, 2008.[3]

Campbell filed a petition for writ of habeas corpus in the Third District on March 19, 2007, claiming appellate counsel was ineffective for failing to raise DNA admissibility and Frye issues on direct appeal. [DE# 10, App. Y]. The Third District denied relief without requiring the State to respond on March 30, 2007. Campbell v. State, 952 So. 2d 1199 (3D07-749).

---

[3] The Court takes judicial notice of the records maintained by the clerk of the Third District Court of Appeal pertaining to Campbell located at http://199.242.69.70/pls/ds/ds_docket?p_caseyear=2007&p_casenumber=3174&psCourt=3&psSearchType=. See Fed. R. Evid. 201.

Campbell filed the instant petition on January 15, 2009.[4] He argues counsel was ineffective for failing to: (1) investigate and prepare for trial and discuss trial strategy with Campbell; (2) challenge the admissibility of the State's DNA test results; (3) hire a defense DNA expert; (4) request a <u>Frye</u> hearing on the DNA extraction method and computation of population frequencies; (5) suppress Campbell's identity; and (6) impeach State witness Leo Hernandez's inconsistent descriptions of the perpetrator and Officer Gurbut's false statements describing the suspect.

### III. Statute of Limitations and Exhaustion

The Respondent concedes the instant petition was timely filed and the claims have been exhausted in State court.

### IV. Standard of Review

A prisoner in state custody may not be granted a writ of habeas corpus for any claim adjudicated on the merits in state court unless the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented" to the state court. 28 U.S.C. § 2254(d)(1), (2); <u>see</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000); <u>Fugate v. Head</u>, 261 F.3d 1206, 1215-16 (11th Cir. 2001).

A decision is "contrary to" or an "unreasonable application of" the Supreme Court's clearly established precedent within the meaning of § 2254(d)(1) only if the state court applies a rule that

---

[4] The Eleventh Circuit recognizes the "mailbox" rule in connection with the filing of a prisoner's petition for writ of habeas corpus. <u>Adams v. United States</u>, 173 F.3d 1339 (11th Cir. 1999) (prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing).

contradicts the governing law as set forth in Supreme Court case law, or if the state court confronts a set of facts that are materially indistinguishable from those in a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. Brown v. Payton, 544 U.S. 133, 141 (2005); Williams, 529 U.S. at 405-06. In the habeas context, clearly established federal law refers to the holdings of the Supreme Court's decisions as of the time of the relevant state-court decision. Hall v. Head, 310 F.3d 683, 690 (11th Cir. 2002) (citing Williams, 529 U.S. at 412). However, in adjudicating a petitioner's claim, the state court does not need to cite Supreme Court decisions and the state court need not even be aware of the Supreme Court cases. See Early v. Packer, 537 U.S. 3, 8 (2002); Parker v. Sec'y, Dep't of Corr., 331 F.3d 764, 775-76 (11th Cir. 2003).

So long as neither the reasoning nor the result of the state court decision contradicts Supreme Court decisions, the state court's decision will not be disturbed. Id. Further, a federal court must presume the correctness of the state court's factual findings unless the petitioner overcomes them by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1); Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).

Campbell seeks habeas relief based on ineffective assistance of trial counsel. The United States Supreme Court clearly established the law governing ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984). Strickland requires a criminal defendant to show that: (1) counsel's performance was deficient and (2) the deficiency prejudiced him. Id. at 690. As to the first prong, deficient performance means performance outside the wide range of professionally competent assistance. Id. The judiciary's scrutiny of counsel's performance is highly

deferential. Id. at 689.

As to the second prong, a defendant establishes prejudice by showing that, but for counsel's deficient performance, there is a reasonable probability the outcome of the proceedings would have been different. Id. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings. Id.

A defendant must satisfy both the deficiency and prejudice prongs set forth in Strickland to obtain relief on an ineffective assistance of counsel claim. Failure to establish either prong is fatal and makes it unnecessary to consider the other. Strickland, 466 U.S. at 697.

Combining AEDPA's habeas standard and Strickland's two-pronged test provides the relevant inquiry in this case. To obtain habeas relief, Campbell must show the state court "applied Strickland to the facts of his case in an objectively unreasonable manner" when it rejected his claims of ineffective assistance of counsel. Bell v. Cone, 535 U.S. 685, 699 (2002).

## V. Discussion
(1) Trial Preparation

Campbell claims counsel failed to investigate and prepare for trial and discuss trial strategy with him. The State court denied this claim because counsel was well-prepared for trial and cross-examination and did an excellent job defending Campbell. The court further noted that Campbell did not raise any of his concerns with the trial court. The State court's finding that counsel was not ineffective is supported by the record and is not an unreasonable application of clearly established federal law.

Counsel is required to conduct a reasonable investigation when preparing for trial. Strickland, 466 U.S. at 690; Williams v. Head, 185 F.3d 1223, 1236-37 (11th Cir. 1999)(counsel has no absolute duty to investigate a particular line of defense or to conduct a thorough investigation before developing a strategy). General, vague, conclusory, speculative and unsupported claims cannot support relief for ineffective assistance of counsel. Hill v. Lockhart, 474 U.S. 52 (1985); Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991).

The record reveals that counsel was not deficient. Counsel was familiar with the legal and factual issues relevant to the case and zealously advocated Campbell's position. Counsel vigorously cross-examined the witnesses about the description of the assailant, photo array identification, DNA methodology and significance of the DNA results. In addition, counsel attacked the State's case in summation and argued the evidence was insufficient to prove Campbell's guilt. Campbell's claim is also insufficient to warrant relief to the extent he claims counsel never discussed trial strategy with him. Campbell repeatedly stated during trial that he was satisfied with the defense presented.[5] See [DE# 10, T. 4, 296-97]. Further, he fails to demonstrate prejudice by explaining what information counsel failed to discuss with him and how that information would have probably changed the outcome of trial.

(2)  DNA Evidence

Campbell argues counsel failed to challenge the admissibility of the State's DNA testing. The State court denied this ground

---

[5] After both sides had rested and the jury began deliberating, Campbell complained for the first time that counsel should have presented an alibi defense. [DE# 10, T. 342-44]. Counsel, who had been assigned to the case since 2004, explained Campbell had never mentioned an alibi defense. [DE# 10, T. 344].

10

because counsel effectively challenged the DNA evidence at trial. Further, the court noted that the DNA evidence was admissible and could not have been excluded.

The State court's finding that counsel effectively challenged the State's DNA evidence is supported by the record. Counsel attacked the collection of evidence, methodology for testing the evidence, and the State witness' statistical analysis of the results. Counsel was not deficient for failing to move to suppress the evidence because it was admissible under Florida law. See issue (4), infra; Pugh v. McNeil, 2008 WL 1931359 (M.D. Fla. May 2, 2008) (even if counsel was deficient for failing to file motion to suppress, petitioner could not demonstrate such a motion would have been granted to satisfy Strickland's prejudice prong). Campbell has failed to demonstrate counsel was deficient or that any such deficiency prejudiced him, therefore, the State court's denial of this claim is not contrary to or an unreasonable application of Strickland.

(3)  Defense Expert

Campbell claims counsel should have hired a defense DNA expert. The State court denied this claim because Campbell failed to show a defense expert would have had favorable testimony or led to a different result.

Campbell's claim is facially insufficient to support relief because he does not explain how a DNA expert would have reached a conclusion different from the State's expert that probably would have changed the outcome of trial. See Lockhart, 474 U.S. at 52 (petitioner must allege specific facts establishing both deficient representation and prejudice); Tejada, 941 F.2d at 1559 (vague and conclusory allegations are insufficient to support relief on a

claim of ineffective assistance of counsel). The State court's denial of this claim is therefore consistent with Strickland.

(4)  Frye Hearing

Campbell contends counsel should have requested a Frye hearing on the DNA extraction method and computation of population frequencies. The State court found a Frye hearing was unnecessary and would not have changed the trial's outcome.

DNA analysis that is properly conducted satisfies the Frye test and is admissible in Florida. See Hayes v. State, 660 So. 2d 257, 264 (Fla. 1995) (properly conducted DNA analysis satisfies the Frye test); Brim v. State, 695 So. 2d 268 (Fla. 1997) (population statistics analysis must satisfy Frye). The proponent of such evidence must prove the methodology used has gained general acceptance in the scientific community. Proof may include expert testimony, scientific and legal writings as well as judicial opinions. Hadden v. State, 690 So. 2d 573, 578 (Fla. 1997).

The State's DNA expert testified in detail about the collection, testing and statistical analysis techniques used on the DNA evidence in this case. The trial court found the expert's testimony established that "generally accepted scientific procedures for the collection and the comparison of DNA evidence and DNA profiles and the Court finds that the statistical evidence presented regarding DNA meets the Frye standard of scientific reliability." [DE# 10, T. 283-84]. This conclusion is supported by the record and Campbell fails to refuse it. Any objection based on Frye under these circumstances would have been unsuccessful. Accordingly, Campbell has failed to establish either Strickland prong and the State court correctly denied relief.

12

(5) <u>Motion to Suppress</u>

Campbell contends counsel should have filed a motion to suppress identification evidence. In denying Campbell's motion for post-conviction relief, the State court noted it would have denied any motion to suppress because it lacked any factual or legal basis and because the identifications were not improper or suggestive.

"[C]onvictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." <u>Simmons v. United States</u>, 390 U.S. 377, 384 (1968). In determining whether photographic identifications are admissible, the court must first decide whether the display was impermissibly suggestive, and if it was suggestive the court must then determine whether the identification procedure created a substantial likelihood of misidentification. <u>United States v. Russo</u>, 796 F.2d 1443 (11th Cir. 1986). The fundamental test of fairness for photo arrays is met where a lineup containing six pictures is shown. <u>United States v. Smith</u>, 546 F.2d 1275 (11th Cir. 1977).

In the instant case, a witness identified Campbell from a photo array several years after the offense and at trial. The photo array, which was introduced at trial, was compiled of photographs that were placed randomly on a sheet. The witness was certain about the identification and the officer did not tell the witness who to identify. The witness also unequivocally identified Campbell at trial. Counsel was not deficient because there was no basis for suppressing either of the two identifications.

Further, even if counsel was deficient in failing to suppress

13

the identifications, no prejudice resulted. DNA evidence from a baseball hat the assailant was wearing matched Campbell's DNA. Therefore, there is no reasonable probability that any deficiency regarding the photo array and in-court identifications affected the outcome of trial. As Campbell has demonstrated neither deficiency nor prejudice, the State court's denial of this claim is not contrary to or an unreasonable application of Strickland.

(6)   Failure to Impeach

Campbell contends counsel should have objected to the State's knowing use of perjured testimony and should have impeached State witnesses. Specifically, he argues that Officer Gurbut erroneously testified she talked to witness Hernandez on the day of the incident, and failed to point out inconsistent descriptions of the perpetrator in the police report and witness statements. The State court denied relief after finding counsel effectively cross-examined the State's witnesses.

Campbell's claim is refuted by the record. Hernandez denied speaking to any officer on the day of the offense whereas Officer Gurbut testified that she interviewed Hernandez that day. Counsel cross-examined Gurbut about speaking to Hernandez and attempted to impeach her with an offense incident report. See § 90.608, Fla. Stat. The report did not refresh Gurbut's recollection five years after the offense and several of the prosecutor's objections were sustained. Nevertheless, counsel's cross-examination notified the jury of the inconsistency between Hernandez's and Gurbut's testimony. See, e.g., Routly v. Singletary, 33 F.3d 1279, 1288-89 (11th Cir. 1994) (cross-examination was not outside the range of professionally competent assistance).

Even if counsel was deficient in handling this issue, relief

would not be warranted because Campbell has failed to demonstrate prejudice. Hernandez identified Campbell from a photo array as well as in court. The identifications were corroborated by DNA evidence. Inconsistent testimony about whether Gurbut took a statement from Hernandez on the day of the offense does not negate this identification evidence; different handling of this issue would not probably have changed the outcome of trial. See Routly, 33 F.3d at 1289 (no prejudice resulted from counsel's failure to more fully explore areas of cross-examination). The State court's rejection of this ground is not contrary to or an unreasonable application of Strickland.

Based upon the foregoing, it is recommended that this petition for writ of habeas corpus be denied.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

SIGNED this 8th day of January, 2010.

    UNITED STATES MAGISTRATE JUDGE

cc:   Walter B. Campbell, pro se
      DC# 412812
      Columbia Correctional Institution
      216 SE Corrections Way
      Lake City, FL 32025-2013

      Richard L. Polin, AAG
      Office of the Attorney General
      444 Brickell Ave., Suite 650
      Miami, FL 33131